IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Theresa Lopez-Gonzales, individually and on behalf of all others similarly situated under 29 U.S.C. 216(b)**<br><br>*Plaintiffs,*<br><br>v.<br><br>**Brothers and Son, a Partnership d/b/a The Plaza Restaurants; Jose Ramos; and Martin Ramos**<br><br>*Defendants.* | No. _____<br><br>**COLLECTIVE ACTION COMPLAINT** |

Theresa Lopez-Gonzales, individually and on behalf of all others similarly situated files this complaint against Brothers and Son, a Partnership, d/b/a The Plaza Restaurants, Jose Ramos, and Martin Ramos (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA").

## I.  NATURE OF SUIT

1. This is a collective action brought by Plaintiff on behalf of herself and all others similarly situated under 29 U.S.C. § 216(b) who worked as servers at one or more of the Defendants' restaurant locations in Texas.

2. In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living. The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay." *Barrentine v.*

1

*Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

3. Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a). However, for tipped employees, employers may take a "tip credit" against payment of the full minimum wage in an amount up to $5.12 per hour, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and are able to pay employees as little as $2.13 per hour plus tips.

4. Though, in utilizing the tip credit defense, the FLSA specifically sets forth two conditions that an employer[1] must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *Id*. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver*

---

[1] *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) (quoting *Bernal*, 579 F.Supp.2d at 808) ("[d]efendants, as the employers, bear the burden of proving that they are entitled to taking tip credits."); *Whitehead v. Hidden Tavern Inc.*, 765 F. Supp. 2d 878, 881-82 (W.D. Tex. 2011) (The burden of proof is not upon plaintiffs under the circumstances of establishing a tip credit. Case law illustrates the employer must establish the entitlement to the tip credit after the employee pleads a violation of the tip credit provision.)

*Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

5. Here, Defendants have a policy or practice of paying their employee servers, including Plaintiff, subminimum hourly wages under the tip-credit provisions of the FLSA. However, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to inform Plaintiff and Class Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) did not allow Plaintiff and Class Members to retain all of their tips; (3) required Plaintiff and Class Members to perform non-tipped work that was *unrelated* to Plaintiff and Class Members' tipped occupation (i.e., "dual jobs"); and (4) required Plaintiff and Class Members to perform non-tipped work that, although related to Plaintiff and Class Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.[2]

6. Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

7. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of herself and all others similarly situated.

---

[2] Whenever the term "workweek" is used in this Complaint, it shall carry the meaning assigned to it in *29 C.F.R. 778.105* ("a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods. It need not coincide with the calendar week but can begin on any day and at any hour of the day.")

## II. PARTIES

8. Plaintiff, Theresa Lopez-Gonzales, is an individual who was employed by Defendants within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by her consent attached as "*Exhibit A*."

9. Putative Class Members are all individuals who worked as a server at any of Defendants' restaurants located in Texas during the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were paid a direct cash wage of less than minimum wage ("Class Members"). Class Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

10. At all times hereinafter mentioned, Plaintiff and Class Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

11. Defendant Brothers and Son is a partnership doing business as The Plaza Restaurant. Defendant operates a restaurant commonly known as The Plaza Restaurant with several locations in Texas and one location in Oklahoma. Defendant can be served with process by serving one of its partners, Martin Ramos or Jose Ramos.

12. Defendant Martin Ramos, an individual, is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, Martin Ramos is a partner of Brothers and Son. Martin Ramos acts directly or indirectly in the interest of The Plaza Restaurant in relation to its employees by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at The Plaza Restaurants. Martin Ramos can be served at his residence located at 6201 HYDE

PKWY, AMARILLO TX 79109, or wherever he may be found.

13. Defendant Jose Ramos, an individual, is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, Jose Ramos is a partner of Brothers and Son. Jose Ramos acts directly or indirectly in the interest of The Plaza Restaurant in relation to its employees by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at The Plaza Restaurants. Jose Ramos can be served at his residence located at 2300 LANCELOT ST, BORGER TX 79007, or wherever he may be found.

### III.   JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

15. This Court has personal jurisdiction over Defendants because Defendants are each doing business in Texas, and employing Texas residents, including Plaintiff, to work at one or more of Defendants' restaurants located in the state of Texas.

16. Venue is proper in the Northern District of Texas under 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district. Defendants operate The Plaza Restaurant in locations throughout Texas including a location within this division and district.

### IV.   COVERAGE UNDER THE FLSA

17. At all relevant times, Defendants have each, individually and jointly, been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all relevant times, Defendants have each, individually and jointly, acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and Class Members.

19. Specifically, Defendant Martin Ramos and Defendant Jose Ramos through their ownership interests in The Plaza Restaurants control the day-to-day decisions of the restaurant by making strategic, operational and policy decisions, and exerting operational control over its employees. Moreover, Martin Ramos and Jose Ramos, both, have the power to hire and fire employees, discipline employees, create and enforce employee policies, and set employee compensation. Therefore, Martin Ramos and Jose Ramos, both, are individually liable as employers as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all relevant times, Defendants have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose – namely, operating a restaurant called The Plaza Restaurants. Plaintiff and Class Members were employed by Defendants to work as servers.

21. At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22. At all relevant times, Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who were engaged

in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326 - 329 (5th Cir. 1993).

23. As part of their employment, Plaintiff and Class Members handled food and other food service items that traveled in interstate commerce, served customers who were traveling from out-of-state or across interstate lines, or processed interstate credit card transactions.

## V. FACTS

24. Defendants operate a restaurant commonly known as The Plaza Restaurant with multiple locations in Texas and one location in Oklahoma.

25. During their employment with Defendants, Plaintiff and Class Members handled and sold food and beverages that had moved in interstate commerce as defined by 29 U.S.C. § 203(b). Plaintiff and Class Members also regularly handled credit card transactions involving institutions located across interstate lines.

26. At all times relevant, Plaintiff and Class Members were Defendants' "employees" as that term is defined by the FLSA and relevant case law. *See e.g.*, *Reich*, 998 F.2d at 327.

27. As part of the payment scheme that Defendants used to compensate Plaintiff and Class Members, Defendants paid Plaintiff and Class Members a subminimum hourly wage and purported to utilize the tip credit against the payment of the full minimum wage. The use of the tip credit results in huge savings to Defendants because Defendants compensate Plaintiff and Class Members at a significantly reduced hourly wage of $2.13 and the balance of their wages come directly from customers in the form of tips.

28. For instance, during the three-year period preceding the filing of this lawsuit, Defendants employed Plaintiff as a server and paid her $2.13 per hour prior to accounting for the receipt of earned tips. Defendants then purported to rely on the tips Plaintiff earned by applying at

7

least a $5.12 per hour to bring Plaintiff's effective rate of pay, with tips included, up to the required minimum wage of $7.25.

29. Plaintiff and Class Members were all paid a subminimum hourly rate of pay to work as servers. Defendants purported to rely on tips generated from customers to supplement Plaintiff and Class Members' subminimum hourly wage. *See* 29 U.S.C. § 203(m). Section 203(m) is known as the tip-credit and is an affirmative defense to the payment of minimum wage under Section 206 of the FLSA. *See Bernal v. Vankar Enters.*, 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) ("Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits.")

30. However, Plaintiff and the Class Members have been victimized by Defendants' payment scheme that violates the FLSA, preventing Defendants from utilizing the tip credit as an affirmative defense to the payment of the full minimum wage under Section 206.

31. Specifically, Defendants required Plaintiff and Class Members to share a portion of their tips with other employees who do not regularly and customarily receive tips. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'")

32. For example, Plaintiff and Class Members were required to contribute a portion of their tips to a tip pool. However, Defendants retained portions of the tips that Plaintiff and Class Members contributed to the tip pool. As another example, Defendants required Plaintiff and Class Members to contribute tips to a tip pool for non-existent employees or employees who were not scheduled.

33. Plaintiff and Class Members are required to share tips with a "bartender" based on a percentage of Plaintiff and Class Members' total sales, including food and alcohol sales. Oftentimes, Defendant did not schedule a bartender to work or a bartender was not working. However, Defendant still required Plaintiff and Class Members to allocate a portion of their tips to "bartender" even when there was no bartender scheduled to work or a bartender was not working.

34. Plaintiff and Class Members are further required to share tips with bussers. However, even when a busser was not scheduled to work or a busser was not bussing tables, Defendant still required Plaintiff and Class Members to contribute a set percentage of their tips to the tip pool for these non-existent employees.

35. Plaintiff and Class Members were also required to tip out on to-go orders, even if they were solely responsible for placing and gathering the to-go order.

36. In addition, Defendants distributed portions of Plaintiff and Class Members' tips from the tip pool to "expeditors." Expeditors are back of the house employees who worked in the kitchen and do not customarily receive tips.[3] The expediter spent most of their time performing back-of-the-house duties such as preparing salads, plating food in the kitchen, and keeping food preparation lines clean. Plaintiff and Class Members were required to tip out the expeditor – including the time the expeditor spent performing back-of-the-house duties. The expeditor was ineligible to receive tips based upon their time performing back-of-the house duties, and therefore, their inclusion in the tip pool is a violation of Section 203(m).

---

[3] An employee's status as an employee who "customarily and regularly receives tips" is "determined on the basis of his or her activities," not on the employee's job title. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047, at *2 (Nov. 4, 1997); *see also Myers v. the Copper Cellar Corporation*, 192 F.3d 546, 550-51 (6th Cir. 1999).

37.     Defendants' pattern and practice of retaining tips from the tip pool and sharing Plaintiff and Class Members' tips with employees who do not customarily receive tips results in Defendants' forfeiture of the tip credit. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'")

38.     Because Defendants required Plaintiff and Class Members' to share tips with other employees who do not customarily receive tips, Defendants failed to adhere to 29 U.S.C. § 203(m) and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage.

39.     In addition, while utilizing the tip credit, Defendants required Plaintiff and Class Members to pay for various expenses including uniforms, ink pens, aprons, check presenters, and a credit card processing fee.

40.     In addition, Defendants required Plaintiff and Class Members to pay for mistakes that occur during the course of performing their duties, such as food that appears on a customer's table but for which tunihe customer is, through mere oversight, not charged.

41.     Defendants' pattern and practice of requiring Plaintiff and Class Members to incur the foregoing business expenses is a violation of the FLSA and violates condition two of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c).

42.     Moreover, Defendants failed to inform Plaintiff and Class Members of the

provisions of the tip credit, violating *condition one* of 29 U.S.C. § 203(m). *See* 29 C.F.R. § 531.59(b). If the employer fails to adhere to the FLSA's very specific requirements, it loses its right avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

43. Defendants also regularly and frequently required Plaintiff and Class Members to perform a number of non-tipped duties unrelated to their tipped occupations, including but not limited to: filling and cleaning dressing containers, rearranging bowls and knives for kitchen preparation, wiping down and lining chip baskets, filling and cleaning honey containers and cinnamon sugar shakers, separating silverware, cleaning and lining tortilla warmers, stocking cracker baskets, spoons, sopapilla forks and plates, to-go cups and plates, coffee containers, and sugar containers, filling ice containers, cutting lemons and limes, cleaning and washing dishes, preparing food in the kitchen, and other back-of-the-house tasks unrelated to Plaintiff and Class Members' tipped occupation.

44. Moreover, Defendants regularly and frequently required Plaintiff and Class Members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to rolling silverware, wiping down tables, setting tables, busing tables, and other "side-work." These non-tipped duties related to Plaintiff and Class Members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek.

45. Defendants paid Plaintiff and Class Members a sub-minimum wage for all hours worked, including the time Plaintiff and Class Members were performing nontipped duties.

46. During the relevant time period, Defendants were aware of the FLSA's provisions governing the payment of tips and wages to tipped employees, including payment of tips and wages

to Plaintiff and Class Members.

47.     Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

48.     Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was willful and was not based on good-faith or reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

49.     During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff.

## VI. COLLECTIVE ACTION ALLEGATIONS

50.     The foregoing paragraphs are fully incorporated herein.

51.     Plaintiff brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current employees of Defendants. The proposed collective of similarly situated employees ("Class Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All individuals who worked as a server at any of Defendants' restaurants located in Texas during the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were paid a direct cash wage of less than minimum wage.**

52.     FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

53.     Other employees have been victimized by Defendants' common pattern, practice,

and scheme of paying employees in violation of the FLSA. Plaintiff is aware of other employees who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on other servers who worked for Defendants.

54. Plaintiff and Class Members have the same pay structure, have the same job duties, were required to participate in the tip pool from which a portion of the tips were retained by Defendants or distributed to ineligible participants, were required to pay expenses, and were required to perform non-tipped duties while being paid at the subminimum "tipped wage." Plaintiff and Class Members are all victims of Defendants' unlawful compensation scheme.

55. Plaintiff and the Class Members are all non-exempt for purposes of minimum wage payments under the FLSA.

56. Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members. Plaintiff's experience in regard to pay is typical of the experiences of the Class Members.

57. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The Class Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and Class Members.

### VII. COUNT I: MINIMUM WAGE VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT

58. The foregoing paragraphs are fully incorporated herein.

59. Defendants' failure to pay Plaintiff and Class Members at the full minimum wage

rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

60. During the relevant period, Defendants have violated and is violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and Class Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

61. Defendants failed to pay Plaintiff and Class Members the full minimum wage according to the provisions of the FLSA for each and every hour and workweek that Plaintiff and Class Members worked for Defendants during the statutory time period, for the duration of their employment, in violation of 29 U.S.C. § 206(a).

62. At all times relevant, Defendants compensated Plaintiff and Class Members less than the federally mandated minimum wage of $7.25 per hour. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants, Plaintiff, or Class Members.

### VIII. DAMAGES SOUGHT

63. The foregoing paragraphs are fully incorporated herein.

64. Plaintiff and Class Members are entitled to recover compensation for each and every hour worked at the federally mandated minimum wage rate.

65. Plaintiff and Class Members are entitled to recover compensation for all misappropriated tips and unlawful deductions.

66. Plaintiff and Class Members are also entitled to an amount equal to all of the unpaid wages (including all of their misappropriated tips) as liquidated damages because Defendants' actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

67. Plaintiff and Class Members are entitled to recover their attorneys' fees and costs

as required by the FLSA. *See* 29 U.S.C. § 216(b).

## IX.  PRAYER

68.  Plaintiff and Class Members pray for judgment against Defendants, jointly and severally, as follows:

   a. For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including misappropriated tips) due to Plaintiff (and those who may join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips) due to Plaintiff (and those who may join in the suit);

   b. For an order awarding Plaintiff (and those who may join in the suit) an amount of pre-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

   c. For an order awarding Plaintiff (and those who may join in the suit) attorneys' fees;

   d. For an order awarding Plaintiff (and those who may join in the suit) the costs of this action; and

   e. For an order granting such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
　　Drew N. Herrmann
　　Texas Bar No. 24086523
　　*drew@herrmannlaw.com*
　　Pamela G. Herrmann
　　Texas Bar No. 24104030
　　*pamela@herrmannlaw.com*

15

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-887-1878
ATTORNEYS FOR PLAINTIFF
AND COLLECTIVE MEMBERS

Exhibit A

## Notice of Consent

I, __Theresa Lopez-Gonzales_____, consent and agree to be a party-plaintiff to a lawsuit brought under the Fair Labor Standards Act for claims of unpaid wages against my former employer(s). I understand that this lawsuit is brought under the Fair Labor Standards Act. I hereby consent, agree, and opt-in to become a party-plaintiff and be bound by any judgment of the Court or any settlement of this action. I also designate Herrmann Law, PLLC, its associated attorneys, and any other attorneys with whom they may associate ("the Attorneys") to prosecute my wage claims.

In the event the case is certified and then decertified, I authorize Herrmann Law, PLLC to use this Consent Form to re-file my claims in a separate or related action against my employer.

_[DocuSigned signature: 271F2626D0CB4B2...]_                                    2/15/2020

Signature                                                                        Date